UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:17-cr-00223-JPH-DML |
| BRYANT PINNER, | ) -02 |
| Defendant. | ) |

**ORDER ON MOTION IN LIMINE**

The government has filed a motion in limine, seeking to bar Defendant Bryant Pinner from introducing evidence and making arguments about the necessity defense.[1] Dkt. [88]. For the reasons that follow, that motion is **GRANTED in part and DENIED in part**.

**I.
Facts and Background**

Mr. Pinner is charged with being a felon in possession of a firearm. Dkt. 24. Trial is set for October 7, 2019. Dkt. 97. The government has filed a motion in limine, seeking to bar Mr. Pinner from introducing evidence and making arguments about the necessity defense. Dkt. 88 at 1.

Mr. Pinner has responded, providing a factual proffer, dkt. 103, which the Court accepts for this order, *see United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). He explains that on March 19, 2017, Mr. Pinner was living

---

[1] The Court follows *United States v. Kilgore*, 591 F.3d 890 (7th Cir. 2010), by calling the defense "necessity," but the name is not material, *see United States v. Haynes*, 143 F.3d 1089, 1091 (7th Cir. 1998).

1

at the Meadowlark Apartments in Indianapolis with his girlfriend R.G. *Id.* at 2. R.G.'s sister, C.M., also lived at the Meadowlark Apartments, but in a different building separated by a parking lot and courtyard. *Id.* at 2–3.

On the morning of March 19, C.M. and her then-boyfriend Justin Covington were arguing and intruded uninvited into Mr. Pinner's apartment. *Id.* at 3. Five people—Mr. Pinner, Mr. Covington, C.M., R.G., and R.G.'s teenage son—soon left Mr. Pinner's apartment and walked across the courtyard toward C.M.'s apartment. *Id.* Mr. Covington walked in the back with his hand in his jacket, threatening to kill those in front of him. *Id.*

Shortly into the walk, Mr. Pinner turned and punched Mr. Covington. *Id.* Others joined in the scuffle, but when C.M. fell on top of Mr. Covington everyone else backed away. *Id.* Then Mr. Covington shot C.M. in the leg and R.G. in the stomach and fired several shots at Mr. Pinner. *Id.* at 3–4. Mr. Covington tried to shoot R.G. in the head, but the gun was empty or misfired. *Id.* at 4.

R.G. then hid between two cars while C.M. hid elsewhere. *Id.* Mr. Pinner sought help from bystanders and tried to get back into his apartment, but the door was locked. *Id.* Mr. Pinner, R.G., and R.G.'s son did not have cell phones with them. *Id.* Finally, a bystander offered Mr. Pinner a pistol. Mr. Pinner took the gun and moved around the apartment complex for about three minutes. *Id.* at 5. He then gave the pistol back to the bystander. *Id.* Mr. Covington was "on the scene" during that time and came back into the parking

2

lot after Mr. Pinner returned the gun.  *Id.*  A few minutes later, IMPD officers arrived.  *Id.* at 6.

## II.
## Applicable Law

If evidence "clearly would be inadmissible for any purpose," the Court may issue a pretrial order in limine excluding it from further consideration. *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Orders in limine thus "ensure the expeditious and evenhanded management of the trial proceedings" by focusing preparation for trial and streamlining the trial itself. *Id.*  They "are of course common, and frequently granted, in criminal as in civil trials." *United States v. Warner*, 506 F.3d 517, 523 (7th Cir. 2007).  Still, orders in limine are preliminary and "subject to change when the case unfolds" because actual testimony may differ from a pretrial proffer. *Luce v. United States*, 469 U.S. 38, 41 (1984).  The Court may also defer ruling until trial, "when the trial judge can better estimate [the evidence's] impact on the jury." *Jonasson*, 115 F.3d at 440.

Evidence supporting a defense should be excluded in limine "unless all of its elements can be established." *Tokash*, 282 F.3d 962, 968 (7th Cir. 2002) (citation and quotation omitted).  Otherwise, the jury would be burdened with a potpourri of irrelevant evidence and the trial would be derailed.  *Id.*

## III.
## Analysis

The government argues that Mr. Pinner cannot proffer facts showing an immediate threat, so he cannot satisfy the elements of a necessity defense.

3

Dkt. 88 at 7. Mr. Pinner responds that he only held the gun for about three minutes, and during that time he and others remained threatened by greater harm from Mr. Covington. Dkt. 103 at 9.[2]

The necessity defense is narrow. *United States v. Kilgore*, 591 F.3d 890, 893 (7th Cir. 2010). So narrow that it has only been applied "to the individual who in the heat of a dangerous moment disarms someone else, thereby possessing a gun briefly in order to prevent injury to himself." *Id.* (quotation and citation omitted). The defense will "rarely" apply outside that situation. *Id.* (quoting *United States v. Perez*, 86 F.3d 735, 737 (7th Cir. 1996)). But "rarely" is not "never"—the necessity defense can be at issue when there's some evidence of "imminent threat of death or bodily injury to [the defendant] or others." *United States v. Hendricks*, 319 F.3d 993, 1007 (7th Cir. 2003).

Here, Mr. Pinner argues that self-defense and defense of others may apply. Dkt. 103 at 9. Self-defense, though, requires that Mr. Pinner "faced an imminent threat *and* had no reasonable legal alternatives to avoid that threat." *United States v. Feather*, 768 F.3d 735, 739 (7th Cir. 2014). Mr. Pinner has not proffered facts showing that he could not have fled from Mr. Covington. He does say that danger from Mr. Covington "permeated" the minutes until Mr. Pinner returned the gun. Dkt. 103 at 9. But instead of saying why he could not have fled from the danger, he says that he "returned" to defend himself and

---

[2] Mr. Bernstein's accusations that the government is playing "fast and loose" are not helpful. Dkt. 108. The Court sees no basis for such accusations, which are not taken lightly, and directs Mr. Bernstein to review the Standards for Professional Conduct within the Seventh Federal Judicial District. *See* S.D. Ind. Local Rule 83-5(e).

4

others. Dkt. 108 at 2. Returning to a dangerous situation when flight was possible defeats a self-defense theory. *Feather*, 768 F.3d at 739 ("Imminence is an essential element for self-defense because the threatened harm may, in fact, be avoidable: '[I]f the threat is not imminent, a retreat or similar step avoids injury.'" (quoting *United States v. Haynes*, 143 F.3d 1089, 1091 (7th Cir, 1998)); *see United States v. Smith*, 421 Fed. Appx. 649, 650 (7th Cir. 2011).

Defense of others is somewhat different because R.G. had been shot in the stomach, which could have prevented her from fleeing. And Mr. Pinner's proffer is that Mr. Covington stayed on the scene until after Mr. Pinner returned the gun to the bystander. Dkt. 108 at 5. On these proffered facts, the Court cannot determine whether evidence relevant to a defense-of-others theory "clearly would be inadmissible for any purpose." *Jonasson*, 115 F.3d at 440; *cf. United States v. Paolello*, 951 F.2d 537, 539 (3d Cir. 1991) (cited in *United States v. Toney*, 27 F.3d 1245, 1250 (7th Cir. 1994)).

The evidence at trial may show that Mr. Pinner possessed the gun after any imminent threat ended. *See Mahalick*, 498 F.3d 475, 479 (7th Cir. 2007) ("A key feature of the defense is immediacy."). That would make a defense-of-others jury instruction inappropriate. But given Mr. Pinner's proffer, it may be possible that this case is different than the extended firearm possession in *Kilgore*, 591 F.3d 809; *Mahalick*, 498 F.3d 475; and *United States v. Hunter*, 418 Fed. Appx. 490 (7th Cir. 2011), in ways that mean a jury should decide.

**IV.
Conclusion**

The Court therefore **ORDERS** that at trial:

- Counsel for Mr. Pinner **SHALL NOT** reference, imply, or argue self-defense, or attempt to introduce evidence that would be relevant only to a self-defense theory.
- Counsel for Mr. Pinner **SHALL NOT** reference, imply, or argue defense of others, or attempt to introduce evidence that would be relevant only to a defense of others theory, without prior authorization from the Court.
- Issues relating to the necessity defense shall only be raised during a sidebar or otherwise outside the presence of the jury.
- Fact witnesses may testify based on their personal observations of what transpired on the morning of March 19, 2017, from the time Mr. Covington entered Mr. Pinner's apartment until the time the police arrived. Mr. Pinner's counsel **SHALL** follow the above rulings in eliciting testimony.

The parties should be prepared to address this issue at the final pretrial conference. The government's motion in limine, is **GRANTED in part and DENIED in part**. Dkt. [88].

**SO ORDERED.**

Date: 8/27/2019

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Howard N. Bernstein
THE LAW OFFICE OF HOWARD N. BERNSTEIN, LLC
hbernstein210@comcast.net

M. Kendra Klump
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kendra.klump@usdoj.gov

Jeremy A. Morris
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jeremy.morris@usdoj.gov